| | | |
|---|---|---|
| RAYMOND P. WOOD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TOWN OF WARSAW, NORTH | ) | |
| CAROLINA, a Municipal Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

On October 14, 2010, Plaintiff Raymond Wood ("plaintiff" or "Wood") filed suit in Duplin County Superior Court against his former employer, the Town of Warsaw ("defendant" or "Town") [D.E. 1-2]. Wood alleges that the Town terminated his employment as Chief of Police in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 626–634, and North Carolina public policy. Id. On October 26, 2010, the Town removed the case pursuant to federal question jurisdiction [D.E. 1-3]. On May 21, 2012, the Town moved for summary judgment [D.E. 38] and submitted a supporting memorandum and exhibits [D.E. 39]. Wood responded in opposition [D.E. 41, 43], and the Town replied [D.E. 44]. As explained below, the court grants the Town's motion for summary judgment.

I.

From 1976 until April 1, 2009, the Town of Warsaw employed Wood as its Chief of Police [D.E. 43-2] 1 ("Wood Aff."). On January 14, 2008, the Town's Board of Commissioners ("Board") held a closed session meeting to discuss performance improvements Wood needed to make [D.E. 39-3] 187 ("Burrell Dep."). Jason Burrell ("Burrell"), the Town Manager and Wood's supervisor, was not informed in advance about the subject of the meeting and did not plan to offer his own

criticisms. Id. 189–90. On January 24, 2008, Burrell met with Wood and delivered a memorandum ("Performance Memorandum") listing concerns with Wood's job performance [D.E. 39-4] ("Performance Mem."). Burrell directed Wood to "address[] or correct[]" these concerns. Id. 1. The concerns included the need for Wood to wear a uniform, to be more visible and active in the community, to make better use of technology, and to improve his management and training of officers. Id. 1–2. Burrell believed that Wood would retire rather than comply with the requests [D.E. 43-6] 1 ("Burrell E-mail"). The last section of the Performance Memorandum, titled "Change with the time," described concerns with the police department's failure to use technology and the failure to take an "aggressive approach" toward criminal activity. Performance Mem. 2. Before meeting with Wood, Burrell e-mailed another town manager to seek advice in handling the situation. See Burrell E-mail 1. In his reply to his colleague's response, Burrell described one member of the five-member Board and the Mayor as having "conned everyone else to give a list of things that need to be improved upon. If [Wood] is willing to comply fine, if not he needs to be pushed toward retirement." Id.

One of the Town's commissioners, Johnny Hollingsworth, was a downtown merchant who personally disliked Wood. [D.E. 39-2] 146 ("Wood Dep."); Burrell Dep. 160. According to Wood, this animus did not stem from Wood's age. Wood Dep. 146–47. Wood also did not believe that the creation of the Performance Memorandum or the concerns listed therein (including criticism of his lack of aggressiveness or use of technology) were age-related. Id. 67–68, 72. Although Wood thought the Board had animosity toward him, he did not think it was age-related. Id. 146. Moreover, Wood agreed that at least some of the concerns in the Performance Memorandum were legitimate. Id. 72. Nonetheless, Wood denied that there was a problem with a lack of aggressiveness in law enforcement or a lack of officer training. Id. 50–55, 67–68. Wood received no formal performance

2

evaluations during his career as Chief of Police and, besides the Performance Memorandum, received no written discipline or written criticism. Burrell Dep. 43–44.

In September 2008, in order to save money, the Board voted to eliminate two of the Town's four police dispatchers. See Wood Dep. 78. The Board planned to transfer some dispatching duties to the county's dispatching service. Burrell Dep. 88. Wood did not agree with eliminating the two positions. Wood Dep. 81. He wrote a memorandum to the public announcing that police dispatch would no longer be available twenty-four hours a day [D.E. 39-5].

Burrell tasked Wood, as Chief of Police, with deciding which two dispatchers to terminate. Wood Dep. 86, 90. Burrell told Wood that the decision should be based on performance and seniority. Id. 86. Burrell informed the dispatchers that these would be the relevant criteria in Wood's decision. See Burrell Dep. 155. On January 7, 2009, Wood met with the dispatchers to announce the layoffs. Wood Dep. 112. According to the Town's police captain and three dispatchers, Wood told the dispatchers during the meeting that the Board had decided to terminate the two dispatchers with odd (as opposed to even) radio call numbers [D.E. 39-8] 79; [D.E. 39-9]; [D.E. 39-10]; [D.E. 39-11]. Wood denied that he attributed this method to the Board, but acknowledged that he might not remember the meeting fully. Wood Dep. 112–14. Wood also told the dispatchers that the Board and Burrell knew about the meeting but did not care enough to attend. Id. 117–18.

In a post-meeting memorandum to Burrell, Wood wrote that he had told the dispatchers that he based the termination decision on their radio call numbers [D.E. 39-6]. "[E]ven number dispatchers would stay and the odd number dispatchers would be relieved of their duties, as of February 5, 2009." Id. The memorandum also stated that Wood made the decision to use radio call numbers in conjunction with the Board. Id.; see Wood Dep. 101. Wood testified that he actually

3

based the termination decision on merit, despite what he told the dispatchers in the meeting and wrote to Burrell in the post-meeting memorandum. Wood Dep. 90, 104. Wood said he used the excuse about the radio call numbers to avoid hurting any dispatcher's feelings. Id. 104. Wood's statement to the dispatchers about basing the layoff decision on the radio call numbers led one dispatcher to file a grievance. Burrell Dep. 205. The dispatcher believed that using the radio call numbers was unfair [D.E. 39-9]. In Burrell's opinion, how Wood handled the dispatcher layoffs merited Wood's termination. Burrell Dep. 211.

Burrell and the Board were dissatisfied with Wood's job performance in 2008 and 2009. Burrell testified that Wood not only mishandled the dispatcher layoffs, but also was not proactive in leading the department, particularly with regard to technology and police practices. See Burrell Dep. 101, 126, 196–97, 203–04, 211.

On February 9, 2009, the Board met in closed session and unanimously decided to ask Burrell to request Wood's retirement or resignation. Batten Dep. 103–04, 107. In doing so, the Board recognized that Wood worked for Burrell and that Burrell was the decisionmaker. See id. 103; Burrell Dep. 27–28. Burrell agreed with the Board's recommendation and met with Wood on February 11, 2009, and told Wood that he needed to retire or resign. Burrell Dep. 22–29. Burrell testified that his reasons for requesting Wood's retirement or resignation were Wood's work performance, including his poor handling of the dispatcher layoffs, and his failure to make requested changes to the police department. Id. 39–40. In the meeting, Burrell stated that if Wood did not retire or resign, he was likely to be terminated. Id. 23. Wood asserted that in this meeting Burrell told him that the Board wanted a "modern department," that Wood was "from the old school," that "we need to get up in the new century and we need somebody that can progress the department and get us into the next generation," and that the Board wanted "younger blood" in the chief's office.

Wood Dep. 129–30. Burrell denied ever saying anything about "younger blood." Burrell Dep. 38.

Following his meeting with Burrell, Wood requested a hearing with the Board in order to convince the Board to change Burrell's decision. Wood Aff. 1. On March 9, 2009, the date of the Board's next regularly-scheduled meeting, Wood met with the Board and asked them to reconsider Burrell's request for his resignation. Id. According to Wood, as the meeting ended and after the Board declined to change Burrell's decision, Mayor Win Batten (who is not a member of the Board) said that he wanted a younger chief. Wood Dep. 124–25, 142. The audio recording of the meeting does not include this or any similar statements, although there seem to be some inaudible portions and the Mayor allegedly made the statement as the meeting ended. Id. 142. Wood also testified that on other occasions the Mayor had asked Wood when he was going to retire, but described the Mayor's tone as "joking." Id. 145–46.

After the Board meeting, Wood made public allegations of age discrimination, which appeared in the local newspaper. See Batten Dep. 111. In a March 25, 2009 letter to Wood, Burrell denied making any statement about "younger blood" or having any age-related animus toward Wood [D.E. 39-12].

Wood's final day of employment was April 1, 2009. See Wood Aff. The Town did, however, continue to provide healthcare coverage to Wood until September 2009, when he became eligible for Medicare. Id. 2; Batten Dep. 107. At the time of Wood's termination, he was 64 years old. Compl. ¶ 8; Ans. ¶ 8. Before a permanent replacement was found, Police Captain Larry Holland temporarily served as acting Chief of Police. Holland Dep. 53–54. In September 2009, the Town hired a new Chief of Police who was 46 years old. Ans. ¶ 20; Holland Dep. 54.

On August 6, 2009, Wood filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 19, 2010, the EEOC issued Wood a right-to-sue

5

notice. Wood then timely filed suit alleging age discrimination under the ADEA and North Carolina law.

## II.

The Town seeks summary judgment on Wood's claim that the Town wrongfully discharged Wood based on his age, in violation of the ADEA and North Carolina public policy as enunciated in the Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2. In considering the Town's motion for summary judgment, the court views the evidence in the light most favorable to Wood and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially come forward and demonstrate an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 586–87.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). It is insufficient to show a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . ; there must be evidence on which the [fact finder] could

reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

First, Wood claims that the Town discharged him because of his age in violation of the ADEA. The ADEA makes it unlawful for any employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Because Wood has presented no direct evidence that he was discharged because of his age, his claim proceeds under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004) (applying McDonnell Douglas analysis to ADEA claim). Under this framework, a plaintiff first must establish a prima facie case. See, e.g., O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996). If the plaintiff does so, the defendant must offer a legitimate non-discriminatory reason for the employment decision. McDonnell Douglas, 411 U.S. at 802–03. If the defendant does so, the plaintiff has "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." Mereish, 359 F.3d at 336 (quoting Burdine, 450 U.S. at 256). To prevail, the plaintiff must establish not just that age was a motivating factor in the employer's employment action, but rather must prove that "age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176–77 (2009); see Duffy v. Belk, Inc., 477 F. App'x 91, 93 (4th Cir. 2012) (unpublished); Bodkin v. Town of Strasburg, 386 F. App'x 411, 413 (4th Cir. 2010) (per curiam) (unpublished).

7

To establish a prima facie case of age discrimination under the McDonnell Douglas framework, Wood must prove that (1) he was in the age group protected by the ADEA; (2) he was discharged; (3) at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) after his discharge, he was replaced by someone of comparable qualifications who was substantially younger. See O'Connor, 517 U.S. at 310–13. The Town concedes that Wood satisfies three of the four elements of his prima facie case. Wood is in the protected age group, was discharged, and was replaced by a substantially younger person. The Town, however, argues that Wood has failed to raise a genuine issue of material fact as to whether Wood was performing his job at a level that met the Town's legitimate expectations in February 2009.

Wood can meet his initial burden to demonstrate satisfactory job performance in two ways: he can show that he was meeting his employer's legitimate job expectations at the time of his discharge or he can show that the job expectations were illegitimate. See, e.g., Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 516–18 (4th Cir. 2006). Wood does not argue that the Town had illegitimate expectations for his performance. Therefore, Wood must demonstrate a genuine issue of material fact concerning whether he was meeting the Town's expectations in February 2009.

The Town has presented substantial evidence indicating that Wood's job performance in February 2009 was not meeting its legitimate expectations. The January 2008 Performance Memorandum cited numerous deficiencies in Wood's performance, including allowing officers to engage in non-work-related tasks, failing to appear at Board meetings, and being insufficiently proactive in discovering and using new technology. Performance Mem. 1–2. In addition, Burrell perceived that Wood was not adequately performing his duties as Police Chief during 2008 and 2009. Performance Mem.; Burrell Dep. 101, 125–26, 196–97, 203–04; cf. Ruff v. Target Stores,

8

Inc., 226 F. App'x 294, 301–03 (4th Cir. 2007) (unpublished) (discussing failure to establish performance prong when employee failed to meet expectations on a number of occasions).

Wood's handling of the dispatcher layoffs in January and February 2009 exemplifies his deficient performance. Regardless of whether Wood's memorandum to Burrell about the dispatcher termination meeting was untrue, Wood's statement to the dispatchers that they were being laid off by radio call number was untrue. Wood's actions misled, confused, and upset the dispatchers. In fact, one dispatcher filed a grievance because she believed that it was unfair for the Town to base a layoff decision on a radio call number, as distinct from performance. See Burrell Dep. 205, 210; [D.E. 39-9]. Additionally, Wood released to the public a misleading memorandum about the dispatcher reduction, [D.E. 39-5], then implied that the Board hatched the plan to lay off dispatchers by radio call numbers. [D.E. 39-6]; [D.E. 39-8] 79; [D.E. 39-9]; [D.E. 39-10]; [D.E. 39-11]. Furthermore, during the termination meeting, Wood told the dispatchers that the Board and Burrell did not care enough to attend the termination meeting. Wood Dep. 117–18. Burrell testified that the incident concerning the dispatcher layoffs was a principal reason for Wood's termination, Burrell Dep. 211, and the proximity between the incident and Wood's February 2009 termination bolsters this assertion. Moreover, Wood has proffered no evidence that another Town employee has been retained under similar circumstances. Therefore, Wood has failed to create a genuine issue of material fact regarding whether he was meeting his employer's legitimate expectations in February 2009.

In opposition to this conclusion, Wood argues that he believed the police department was running well, that he responded to many of the concerns in the Performance Memorandum, and that other concerns were factually inaccurate. Although Wood believed that the police department was well-administered, an employee's perception of his own performance cannot establish a genuine

9

issue of material fact as to whether the employee was meeting his employer's legitimate expectations. See, e.g., King, 328 F.3d at 149; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980) ("[The plaintiff]'s perception of himself... is not relevant. It is the perception of the decision maker which is relevant."). Burrell testified that he believed problems with the department were ongoing. Burrell Dep. 101. Although Wood received no further written critiques after receiving the Performance Memorandum, Burrell had several additional conversations in 2008 and 2009 with Wood about his performance deficiencies. Id. 43–45, 76. The court does not sit as a super-personnel department that considers only written critiques. See, e.g., Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (court "do[es] not sit as a super-personnel department weighing the prudence of employment decisions") (internal quotation omitted). Thus, the court declines to discount the oral critiques that took place between January 2008 and Wood's termination. See id.

Additionally, Wood contests the factual accuracy of the critiques in the Performance Memorandum. However, the issue is whether Burrell, the decisionmaker, believed the critiques to be true, and Burrell did. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 215–17 (4th Cir. 2007); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 293–94 (4th Cir. 2004) (en banc). Furthermore, there is no evidence that the Performance Memorandum's contents were the Town's only concerns or that satisfying these concerns necessarily meant that Wood's performance in February 2009 met his employer's legitimate expectations. Therefore, Wood has failed to create a genuine issue of material fact regarding whether he was meeting his employer's legitimate expectations in February 2009. Accordingly, Wood has failed to prove his prima facie case, and the Town is entitled to summary judgment.

Alternatively, even if Wood had established a prima facie case of age discrimination, Wood

has not raised a genuine issue of material fact as to whether the Town's legitimate reason for his termination was pretextual. The Town has articulated a legitimate, non-discriminatory reason for Wood's discharge: his poor performance culminating in his poor handling of the dispatcher layoffs. Accordingly, the burden shifts back to Wood to provide evidence creating a genuine issue of material fact as to whether the Town's explanation is a pretext for intentional age discrimination. See, e.g., Holland, 487 F.3d at 214.

A plaintiff can show pretext by proving that a defendant's explanation for its employment decision is "unworthy of credence" or false. Reeves, 530 U.S. at 147. The plaintiff, however, may not "simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of age." Laber v. Harvey, 438 F.3d 404, 430–31 (4th Cir. 2006) (en banc). In certain cases, the fact-finder may infer discrimination from the articulated reason's falsity. See id. at 431; Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000). However, an employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148. Moreover, "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge." Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999) (internal quotation omitted).

Wood contends that the Town manufactured allegations of his poor performance. Pl. Corr. Mem. Opp'n 9. The record (which this court has already described) belies this argument. In any event, even if the Town manufactured allegations of Wood's poor performance, it still does not connect Wood's termination to age bias. See Dockins, 176 F.3d at 747 (noting that even intentional sabotage of an employee "is irrelevant unless [the employer] did so because of age bias"). Wood

11

testified that the criticisms of his work performance in the Performance Memorandum were not motivated by age. Wood Dep. 72. Additionally, although there is evidence that one of the five Board members had personal antipathy for Wood, Wood testified that this antipathy was unrelated to Wood's age. Id. 146–47. Finally, Wood's argument ignores the undisputed, poor manner in which he handled the dispatcher layoffs.

The connection Wood draws between his termination and his age primarily focuses on Burrell's statements in Wood's February 2009 termination meeting. See id. 147–48. In the termination meeting, Burrell told Wood that the Board wanted a "modern department," that Wood was "from the old school," that "we need to get up in the new century and we need somebody that can progress the department and get us into the next generation," and that the Board wanted "younger blood" in the chief's office. Id. 129–30.[1]

In analyzing age-related comments, "statements about age may well not carry the same animus as those about race or gender. Unlike race or gender differences, age does not create a true we/they situation—barring unfortunate events, everyone will enter the protected age group at some point in their lives." Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994). To be actionable, there must be a nexus between the statements and the decisionmaker's termination decision. See Warch, 435 F.3d at 520.

Burrell's comments (alone or in combination with all evidence in the case) do not raise a genuine issue of material fact as to whether the Town's stated reasons for Wood's termination were pretextual. Technical skills, qualifications, and performance are not age-related, and an employer lawfully can rely on such factors in making an employment decision. Mereish, 359 F.3d at 335; see

---

[1] Burrell denies making this statement about "younger blood." Burrell Dep. 38, 104–05, 211–12. In construing the evidence in the light most favorable to Wood, the court assumes that Burrell made the statement about "younger blood."

Fisher v. Asheville-Buncombe Technical Cmty. Coll., 857 F. Supp. 465, 469 (W.D.N.C. 1993) ("It is unlawful to fire Plaintiff because of his age. It is not unlawful to require older employees to remain current in their job knowledge, and to fire them for their failure to do so."). In context, Burrell's comments to Wood are innocuous references to the need to keep up with changing technology and police practices. Burrell's reference to "younger blood," without more evidence of discriminatory age animus, does not create a genuine issue of material fact. See Johnson v. Mechs. & Farmers Bank, 309 F. App'x 675, 681 (4th Cir. 2009) (per curiam) (unpublished) (finding that employer's statement about bringing in "young blood" and calling employee "the Godfather" did not create a triable issue of fact); EEOC v. Clay Printing Co., 955 F.2d 936, 942–43 (4th Cir. 1992) (noting that the statements referencing "young blood" in ADEA cases are generally not probative of age discrimination); cf. Tuck v. Henkel Corp., 973 F.2d 371, 376–77 (4th Cir. 1992) (finding a triable issue of fact when "young blood" statements of decisionmakers along with plethora of other evidence reflected employer's desire to terminate older employees close to retirement and replace them with younger individuals), abrogated on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1995).

Wood also relies on the alleged statement of the Mayor at the end of the March 9, 2009 meeting in which the Mayor allegedly stated that he wanted a "younger chief." In support, Wood cites his own hearsay statement to his deputy about the Mayor's alleged comment. See Holland Dep. 51. The March 9, 2009 meeting, however, was recorded and nothing on the recording reflects that the Mayor made the statement that Wood attributes to him. See Wood Dep. 142. The Mayor denies ever making any such statement. See Batten Dep. 111–12.

Even if the court assumes that the Mayor made the alleged statement on March 9, 2009, the statement (alone or in combination with all evidence in the case) does not raise a genuine issue of

13

material fact. Wood agrees that Burrell was the sole decisionmaker concerning Wood's termination. See Pl. Corr. Mem. Opp'n 12. Moreover, Wood does not argue that any other party was the "one principally responsible for the contested employment decision." Hill, 354 F.3d at 290; cf. Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011). Statements by non-decisionmakers do not raise an issue of material fact sufficient to survive summary judgment. Rowe, 233 F.3d at 831. Furthermore, the Mayor allegedly made the statement after the Board had decided on March 9, 2009, not to change Burrell's February 2009 termination decision. Therefore, the Mayor's alleged statement does not create a genuine issue of material fact as to pretext. Accordingly, Wood fails to raise a genuine issue of material fact as to his ADEA claim, and the court grants the Town's motion for summary judgment on the ADEA claim.

Wood also alleges a claim for wrongful discharge in violation of the public policy articulated in North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2. Wood relies on the same evidence to support both his ADEA and his North Carolina wrongful discharge claim. Because Wood's ADEA claim fails, his North Carolina wrongful discharge claim also fails. See, e.g., Henson v. Liggett Grp., Inc., 61 F.3d 270, 277 (4th Cir. 1995).

III.

No rational jury could find that the Wood's age was the but-for cause of his termination. Accordingly, the court GRANTS the Town's motion for summary judgment [D.E. 38] on Wood's ADEA and North Carolina wrongful discharge claims. The clerk shall close this case.

SO ORDERED. This 21 day of December 2012.

JAMES C. DEVER III
Chief United States District Judge